# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| Krista Crumbling; William Stone; Christopher Rich; and Anthony Girard, on behalf of themselves and all others similarly situated,<br><br>                Plaintiffs,<br><br>     v.<br><br>Miyabi Murrells Inlet, LLC; Charleston Miyabi, Inc.; Columbia Miyabi, Inc.; Fantasy Far East, Inc.; United Will Kyoto USA, Inc.; Miyabi Greenville, Inc.; Fayetteville Miyabi, Inc.; Augusta Miyabi, Inc.; Savannah Miyabi, Inc.; Capital Japan, Inc. d/b/a Miyabi; Koichiro Hirao, individually; Koichiro Maeda, individually; and John Does 1–10, individually,<br><br>                Defendants. | C.A. No.: 2:15-cv-4902-PMD<br><br>**ORDER** |

This matter is before the Court on several motions to dismiss filed by various Defendants (ECF Nos. 36, 39, 40, 51, 68, 70, 74).[1] Also before the Court are three motions to stay filed by various Defendants (ECF Nos. 69, 71, 76), and Plaintiffs' Motion to Certify (ECF No. 65). For the reasons set forth herein, the motions to dismiss are granted in part and denied in part, and the other motions are denied as moot.

---

1. The various Defendants are separately represented and have filed substantially similar motions. The Court recognizes that the various Miyabi restaurant locations and other corporate entities are separate legal entities, and nothing in this Order should be construed as a statement to the contrary. However, the Court will refer to the various entities' motions as if they had filed one consolidated motion unless the facts or arguments necessitate differentiation. Additionally, the Court's references to the Miyabi restaurant locations or entities exclude the individual defendants and Capital Japan, Inc.

**BACKGROUND**

On December 10, 2015, Plaintiffs commenced this action on behalf of themselves and all others similarly situated, seeking unpaid minimum wages and unpaid overtime wages pursuant to the collective action provision of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b). Plaintiffs also seek relief for unauthorized deductions from their wages pursuant to the South Carolina Payment of Wages Act ("SCPWA"), S.C. Code Ann. § 41-10-10, *et seq*. Plaintiffs are former servers at several Miyabi restaurant locations in South Carolina, North Carolina, and Georgia.

Plaintiffs primarily allege that Defendants used tip pools that violated the FLSA. Specifically, Plaintiffs assert that Defendants paid some of their employees an hourly wage lower than the statutory minimum wage using the FLSA's Tip Credit provision, 29 U.S.C. § 203(m). Plaintiffs further assert that while Defendants were paying less than the statutory minimum wage using the Tip Credit provision, they required servers to contribute a portion of their tips to tip pools to compensate other employees. Finally, Plaintiffs allege that some of the employees who received money from the tip pools were non-tipped employees who did not qualify to share in the tip pools because they did not customarily and ordinarily receive tips. Because these non-tipped employees did not customarily and ordinarily receive tips, as required by the Tip Credit provision, Plaintiffs allege that the tip pools they and the other potential class members shared with the non-tipped employees violated the FLSA.

**LEGAL STANDARD**

Defendants' standing argument implicates this Court's subject matter jurisdiction and is governed by Rule 12(b)(1). Usually, "questions of subject matter jurisdiction must be decided 'first, because they concern the court's very power to hear the case.'" *Roman v. Guapos III, Inc.*,

970 F. Supp. 2d 407, 411 (D. Md. 2013) (quoting *Owens–Ill., Inc. v. Meade*, 186 F.3d 435, 442 n.4 (4th Cir. 1999)). The plaintiff bears the burden of proof on questions of subject matter jurisdiction. *See Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). "When a defendant challenges subject matter jurisdiction pursuant to Rule 12(b)(1), 'the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.'" *Id.* (quoting *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)). "The district court should grant the Rule 12(b)(1) motion to dismiss 'only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law.'" *Id.* (quoting *Richmond, Fredericksburg & Potomac R.R. Co.*, 945 F.2d at 768).

## DISCUSSION[2]

Plaintiffs filed their initial complaint on December 10, 2015. Then, on February 1, 2016, Plaintiffs filed their first amended complaint. Without Defendants' consent or the Court's leave, Plaintiffs then filed second and third amended complaints on March 8 and March 10, respectively. Defendants filed three different motions to dismiss Plaintiffs' first amended complaint pursuant to Rule 12(b)(6) on February 22, 2016.

Although the Court has concerns about whether Plaintiffs' second and third amended complaints were filed in compliance with Rule 15, the Court may look beyond the pleadings in its evaluation of standing. Accordingly, without deciding whether those amended complaints are valid, the Court will consider the allegations contained therein. In their various motions to dismiss, Defendants first contend that the Greenville, Fayetteville, and Augusta Miyabi locations should be dismissed because no plaintiff alleges that he or she worked at those locations.

---

2.   The Court omits a full procedural history section due to the overlapping motions filed in the case and the minimal assistance such a section would provide. While some procedural history is contained herein, the full procedural history may be found on PACER.

Second, Defendants question whether or not Plaintiffs have standing to bring this entire action in its current form. Because standing is a threshold question, the Court will address it first. *See Roman*, 970 F. Supp. 2d at 411.

*Standing*

"As the party invoking federal jurisdiction, Plaintiffs bear the burden of establishing standing under Article III of the Constitution." *Roman*, 970 F. Supp. 2d at 412 (quoting *McBurney v. Cucinelli*, 616 F.3d 393, 410 (4th Cir. 2010)). As explained by the Fourth Circuit:

> The irreducible constitutional minimum of standing requires (1) an injury in fact—a harm suffered by the plaintiff that is concrete and actual or imminent, not conjectural or hypothetical; (2) causation—a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant; and (3) redressability—a likelihood that the requested relief will redress the alleged injury.

*McBurney*, 616 F.3d at 402 (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102–03 (1998)) (internal quotation marks omitted). Here, Plaintiffs have clearly alleged a sufficient injury-in-fact: the failure to properly be compensated for hours worked. However, whether those injuries may be traced to, or redressed by, the various Defendants remains in question.

Defendants make two separate standing arguments. First, Defendants assert that Plaintiffs lack standing to maintain any claims against the Miyabi restaurant entities with which Plaintiffs had no employer–employee relationship. As discussed above, standing requires both traceability and redressability. *See McBurney*, 616 F.3d at 402. Thus, Plaintiffs must trace their injury to the allegedly wrongful conduct of the Defendants and must be able to recover from those Defendants in the event of a favorable decision. In order for Defendants to be liable under the FLSA, they must have an employer–employee relationship with Plaintiffs. *Roman*, 970 F. Supp. 2d at 412. Accordingly, "Plaintiffs' injuries are only traceable to, and redressable by,

those who employed them." *Id.* Therefore, the Court must conduct an employer analysis to determine whether Plaintiffs may trace their injuries to each Defendant.

An employer under the FLSA is "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). Under that provision, "'[s]eparate persons or entities that share control over an individual worker may be deemed joint employers . . . .'" *Roman*, 970 F. Supp. 2d at 413 (quoting *Schultz v. Capital Int'l. Sec., Inc.*, 466 F.3d 298, 305 (4th Cir. 2006)). The applicable federal regulations provide several examples of joint employment:

> Where the employee performs work which simultaneously benefits two or more employers, or works for two or more employers at different times during the workweek, a joint employment relationship generally will be considered to exist in situations such as:
>
> (1)     Where there is an arrangement between the employers to share the employee's services, as, for example, to interchange employees;
>
> (2)     Where one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee; or
>
> (3)     Where the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer.

29 C.F.R. § 791.2(b). If the employer–employee relationship does not match one of these examples, "courts are to consider the 'economic realities' of the relationship between the employee and the putative employer." *Roman*, 970 F. Supp. 2d at 413 (citing *Schultz*, 466 F.3d at 304). To examine the economic realities of the relationship, the Fourth Circuit has used the factors discussed in *Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465 (9th Cir. 1983), and *Zheng v. Liberty Apparel Co.*, 355 F.3d 61 (2d Cir. 2003). Those factors include the "(1) authority to hire and fire employees; (2) authority to supervise and control work schedules

or employment conditions; (3) authority to determine the rate and method of payment; and (4) maintenance of employment records." *Roman*, 970 F. Supp. 2d at 413. However, "'the determination of joint-employment must be based upon the circumstances of the whole activity.'" *Id.* (quoting *Quinteros v. Sparkle Cleaning, Inc.*, 532 F. Supp. 2d 762, 775 (D. Md. 2008)).

Defendants do not dispute that the Miyabi restaurant entities in this case are employers of each of the employees who worked for their specific restaurant. For example, Defendants do not contest that Miyabi Murrell's Inlet is the employer of Krista Crumbling and the other employees that worked there. However, no plaintiffs have alleged that they were employees of the Miyabi restaurants in Fayetteville and Greenville. Although there may be potential plaintiffs who worked for the Fayetteville and Greenville restaurants, Plaintiffs are not permitted to bring suit against those Miyabi entities "based on the composition of a future collective." *Roman*, 970 F. Supp. 2d at 416. In *Roman*, the plaintiffs brought suit against five locations of a restaurant chain, each of which was a separate legal entity. However, the plaintiffs had only worked in one of the five restaurants. *Id.* at 414. Accordingly, the court in *Roman* dismissed the other four locations from the suit. *Id.* at 412. In dismissing those entities, the court rejected the plaintiffs' arguments that employees of the other locations would likely become plaintiffs once the case was certified as a collective action. A future collective, the court concluded, is insufficient to "satisfy the requirement that Plaintiffs currently demonstrate standing against all defendants." *Id.*; *see also Pashby v. Delia*, 709 F.3d 307, 316 (4th Cir. 2013) ("When the case is a class action lawsuit, the named class representatives 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong.'" (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1001 n.13 (1982))); *Lucas v. BMS Enters., Inc.*, No.

3:09-CV-2159-D, 2010 WL 2671305, at *3 (N.D. Tex. July 1, 2010) (holding that the same principal applies in the collective action context). Accordingly, Plaintiffs cannot maintain an action against the Miyabi entities at which no plaintiff ever worked. Thus, the Fayetteville and Greenville Miyabi restaurants must be dismissed because Plaintiffs lack standing to bring a claim against them.

Second, Defendants assert that Plaintiffs lack standing because each named plaintiff does not satisfy the requirements of standing as to each Defendant. Here, because each named plaintiff did not work for each defendant, Defendants contend that the named plaintiffs cannot trace their injuries to those defendants for whom they did not work. Because the named plaintiffs and opt-ins only worked for one Miyabi restaurant location, Defendants assert that Plaintiffs cannot trace their injuries to any of the other Miyabi restaurant entities.[3] The Court agrees.

The bulk of Plaintiffs' counter-argument on standing can be summarized succinctly as, "it's not in the treatise." While standing may not be addressed in the treatise on which Plaintiffs' counsel relies,[4] it is nonetheless a constitutional requirement. Plaintiffs make two additional arguments that do not address the merits of the standing issue. First, they contend that Defendants are an integrated enterprise and are all liable under the FLSA regardless of employment status. It is clear, however, that "[t]he enterprise and liability analyses are distinct. 'The finding of an enterprise is relevant only to the issue of coverage. Liability is based on the existence of an employer–employee relationship.'" *Cornell v. CF Center, LLC*, 410 F. App'x

---

[3]. This does not suggest that Plaintiffs' standing problem would be solved if one of the named or opt-in plaintiffs had worked for more than one Miyabi restaurant. Rather, only that plaintiff would have standing to sue each of his employers.

[4]. Although the Court's analysis of this issue is focused on Article III's requirements, the Court notes that Defendants have provided the Court with the relevant pages from a treatise published by Littler Mendelson that does address standing in FLSA collective actions.

265, 267 (11th Cir. 2011) (per curiam) (quoting *Patel v. Wargo*, 803 F.2d 632, 637 (11th Cir. 1986)).  Thus, while the Court might employ an integrated enterprise analysis if it were attempting to determine whether a defendant was covered by the FLSA, no defendant has argued that it was not subject to the FLSA's requirements.  As discussed above, the Court finds that the Miyabi restaurant entities cannot be liable to plaintiffs who did not work for them.

Second, Plaintiffs contend that this Court and the Fourth Circuit had opportunities to raise lack of standing *sua sponte* in the FLSA collective action context and failed to do so in several cases.  *See Calderon v. GEICO Gen. Ins. Co.*, 809 F.3d 111 (4th Cir. 2015); *McCoy v. RP, Inc.*, No. 2:14-cv-3171-PMD, 2015 WL 6157306 (D.S.C. Oct. 19, 2015); *Herspold v. King Kong Sushi Bar & Grill*, No. 4:14-cv-3418-RBH (D.S.C.).  The Court believes that the above-referenced cases are of limited value on the question of standing because it was never raised before the Court.  In this case, however, standing has been squarely presented to the Court and Plaintiffs have not shown that the separate Miyabi restaurant entities they have sued are joint employers.

For standing purposes, the Court must determine whether each defendant could be held liable to each plaintiff.  Despite the FLSA's stated goal of efficiency in adjudicating similarly situated employees' claims at the same time, collective actions pursuant to § 216(b) may only be maintained where the named plaintiffs were employed by each of the Defendants.  *See Brunner v. Jimmy John's, LLC*, No. 14 C 5509, 2015 WL 5086388, at *3 (N.D. Ill. Aug. 19, 2015) (finding plaintiffs lacked standing where "some named Plaintiffs admittedly did not work for some named Defendants . . . .").  Here, Plaintiffs have not alleged any kind of joint employment theory that would confer standing against all of the defendants.  First, Plaintiffs have not alleged that Defendants fall into any of the categories included in the FLSA's regulations.  In the Court's

view, the various Miyabi restaurant entities would not fit in any of those categories, necessitating an inquiry into the economic realities of the situation. However, Plaintiffs' allegations of joint employment by the various Miyabi restaurant entities are limited to (1) bare allegations that Defendants share a common business purpose and (2) the fact that Capital Japan, Inc. operates a website listing all of the various Miyabi locations. That is insufficient to show joint employment under the economic realities test. Plaintiffs do not allege that one Miyabi restaurant location had the authority to hire and fire employees of a different Miyabi restaurant location. The same is true for work schedules and conditions, rate and method of payment, and maintenance of employment records. Although those allegations might be properly directed at Capital Japan, Inc. and the individual defendants, there is nothing before the Court that would establish joint employment of any plaintiff by each of the Miyabi restaurant locations. The Court remains skeptical of Plaintiffs' assertions that the individual defendants and Capital Japan, Inc. are joint employers. However, at this stage the jurisdictional facts remain in dispute as to those defendants. Plaintiffs have the burden of proving subject matter jurisdiction, and Plaintiffs have not met that burden as to the Miyabi restaurant locations. Accordingly, each plaintiff lacks standing against certain defendants and, if this case is to survive, the Court must pare it down in conformity with Article III.[5]

---

5. Unlike in *Roman*, different plaintiffs in this case have potentially legitimate claims against different defendants. Because the Court agrees with Defendants that Plaintiffs lack standing to bring this case in its current form, the Court must determine how, if at all, the case may proceed. Plaintiffs' counsel requests that the Court permit the current case to proceed solely against Miyabi Murrell's Inlet, Capital Japan, Inc., and the individual defendants, Koichiro Hirao and Koichiro Maeda. Plaintiffs' counsel further requests that he be permitted to file four additional actions against the other Miyabi restaurant entities and that the Court equitably toll the statute of limitations for those actions. Plaintiffs' counsel's request is granted in part. The Court will permit the present case to continue against Miyabi Murrell's Inlet, Capital Japan, Inc., Koichiro Hirao, and Koichiro Maeda. Plaintiffs are also permitted to file their four additional actions, but any consideration of equitable tolling will necessarily take place after those actions have been filed. Finally, Plaintiffs' counsel is hereby put on notice that if he does not move to amend his complaint in accordance with the rules, the Court will be forced to strike the now-irrelevant material contained in his current Complaint pursuant to Rule 12(f)(1).

The Court recognizes the inherent inefficiency in adjudicating Plaintiffs' claims in various separate lawsuits. However, the Court may not overlook Article III in the interest of efficiency. As a result, all other pending motions (ECF Nos. 65, 69, 71, & 76) are denied as moot.

## CONCLUSION

For the foregoing reasons, it is **ORDERED** that Defendants' Motions to Dismiss are **GRANTED IN PART** and **DENIED IN PART** and all other motions are **DENIED** as moot.

**AND IT IS SO ORDERED.**

*[Signature]*
PATRICK MICHAEL DUFFY
United States District Judge

**June 16, 2016**
**Charleston, South Carolina**